In the Matter of the Estate of
Evelyn Brune, Deceased.
BRUNE,
*Appellant,*
*v.*
OREGON STATE BOARD
OF HIGHER EDUCATION,
*Respondent.*

(No. 78-3-28P, CA 14284)

606 P2d 647

Constance Canfield Jarvis, Portland, argued the cause and filed the brief for appellant.

James M. Brown, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Petitioner appeals from the order of the trial court admitting the will of Evelyn Brune to probate. We reverse.

Evelyn Brune died on March 1, 1978. Petitioner, the son of her half-brother, filed a petition for appointment as personal representative of her estate, alleging that Evelyn Brune died intestate and seeking to have her estate distributed to her legal heirs. Along with the petition, petitioner filed a will which he had found among decedent's personal effects, alleging that it appeared to have been cancelled. He did not seek probate of the will because he believed it had been revoked. He did notify those named in the questioned will of its existence.

The University of Oregon Medical School was named as a beneficiary in the defaced will and sought, through its governing body, Oregon State Board of Higher Education, by cross petition to have the will probated. The trial court determined that the will had not been revoked and admitted it to probate.

The will was executed on March 30, 1968. It appointed an executrix and made 12 separate bequests to individuals and institutions. The residue of the estate was left to the University of Oregon Medical School. The will contained five articles, the first directing payment of the debts of the testatrix and the second directing the disposition of her body. The third article contained the individual bequests, the fourth the residuary bequest and the fifth article appointed the executrix.

When discovered the will was marked with two colors of ink. Article I was untouched. Article II had one of the three sentences lined out, and the word "Executrix" changed to executor in another of the sentences. Of the twelve bequests in Article III, only one remained unchanged. Seven of the bequests were lined through entirely, the beneficiary was changed in

[451]

two of the bequests and the amounts were changed in two. An additional bequest was written between the lines of the original ones. Article IV, the residuary clause, was entirely crossed out by a large X. The name of the executrix in Article V was lined through and another name written above. There was other writing after the signatures of the witnesses.

Partial revocation of a will is not recognized in this state. *Minsinger et al v. U. S. Nat. Bank et al,* 228 Or 218, 364 P2d 615 (1961). Therefore, the will must either have been revoked entirely, or it must be probated as originally written, ignoring the changes and markings made by the testatrix after the will was executed.

Revocation may only be accomplished as provided by statute. ORS 112.275. What is sometimes known as revocation by mutilation is provided in ORS 112.285(2):

"A will may be revoked by being burned, torn, canceled, obliterated or destroyed, with the intent and purpose of the testator of revoking the will, by the testator, or by another person at the direction of the testator and in the presence of the testator."

It is not questioned here that the testatrix was the person who made the marks on the will. They were apparently made on January 20, 1974. The question, then, is what did the testatrix intend when she marked up the will as she did?

Just as there is a presumption that when a duly executed will which was in the possession of the testator cannot be found after the testator's death it was revoked by the testator, *Salter v. Salter, Adm.,* 209 Or 536, 307 P2d 515 (1957), so also a mutilated will which was in the testator's possession is presumed to have been mutilated by the testator with the intent to revoke it. *In re Bond's Estate,* 172 Or 509, 143 P2d 244 (1943); *Price v. Wood,* 254 Or 259, 456 P2d 500 (1969). The question becomes whether the disputed will had been "mutilated" sufficiently to give rise to the presumption.

[452]

From an examination of the will, we conclude that its provisions had been sufficiently obliterated for it to be considered as mutilated. Every dispositive provision was crossed out, lined out or changed in some way by the testatrix except for one bequest of $500. The facts here are much like those in *Price v. Wood, supra,* although in that case the testatrix cut out certain provisions of the will. But here, as in *Price,* all of the dispositive provisions of the will were defaced with the exception of an insignificant bequest. In *Price* the will was held to be mutilated.

Proponents of the will in *Price* relied on *Minsinger v. United States National Bank, supra,* just as respondent does here, claiming that the acts of the testatrix were merely a partial revocation not permissible under Oregon law. However, the changes in the will in *Minsinger* were relatively minor in the context of the entire will, and the contestants there did not contend that the testator intended to revoke the entire will.

The extensive obliteration or cancellation done by the testatrix here is sufficient to warrant invocation of the presumption that all of it was done with the intent to revoke the entire will. Once that presumption of revocation is available, the evidence to overcome it must be "clear and satisfactory." *Price v. Wood, supra.* Here the proponent of the disputed will presented no evidence whatever; it relied on the rule that those asserting revocation of a will have the burden of proof on that issue. *In re Wagner's Estate,* 208 Or 207, 300 P2d 783 (1956). However, because we have concluded petitioner is entitled to the benefit of the presumption, that presumption prevails in the absence of evidence rebutting it. There is none.[1]

---

[1] What little evidence there is supports the conclusion that decedent thought she no longer had a will after she had marked it up. That evidence consisted of a handwritten note dated December 6, 1977, and signed by decedent, which stated:

"I, Evelyn Brune, of sound mind and my own free will, hereby designate George Brune my heir and executor in totality and at his

The disputed will having been revoked, it was not entitled to probate.

Reversed.

discretion of whatever I possess and own at the present time. Any disposition of assets will be at his decision."

Petitioner also produced two pages of a note pad with notes in the testatrix's handwriting dated December, 1975, listing various items of property and sums of money next to the names of individuals and institutions. There were also directions for the disposition of the testatrix's body.

Declarations of a testatrix made after defacing a will are admissible to show the intent with which the acts were performed, *In re Bond's Estate,* 172 Or 509, 143 P2d 244 (1943). Concededly, this evidence is somewhat remote and equivocal, but if it shows anything it shows that decedent thought she had revoked her wills which, in turn, suggests that is what she intended when she defaced her will in January, 1974.