In the Matter of the Estate of
Herbert Henson, Deceased.

FIRST INTERSTATE BANK OF OREGON,
*Respondent,*

*v.*

HENSON-HAMMER,
*Appellant.*

(50-87-02894; CA A47643)

779 P2d 167

James B. Ehrlich, Eugene, argued the cause for appellant. With him on the briefs was Larry O. Gildea, P.C., Eugene.

Michael P. Kearney, Eugene, argued the cause for respondent. With him on the brief was L. Scott Lockwood, Eugene.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Decedent's daughter (daughter) appeals a judgment admitting a copy of her father's will to probate and revoking letters of administration that had been issued to her. Decedent's original will was never found. Daughter contends that the evidence was insufficient to overcome the presumption that decedent destroyed his will with the intention of revoking it and that the court committed reversible error when it sustained an objection to the admission of testimony of a friend of decedent's that decedent would have wanted daughter, rather than petitioner, to manage his estate. On *de novo* review, we affirm.

Decedent took his own life on January 17, 1987, leaving an estate of more than $300,000. Although he had prepared a will on August 20, 1985, the original of that will was not found among his personal belongings after his death. Under the will, petitioner, First Interstate Bank of Oregon (Bank), was appointed personal representative and was the trustee of a testamentary trust, under the terms of which daughter was to receive the income for life, with principal disbursements of $5,000 when the estate was closed and $35,000 when she became 60. On her death, the corpus was to be distributed to her children in equal shares. Daughter was his sole heir, if decedent died intestate.

Decedent was considered by his family to be a miser. His primary interest was in making money and, while living a frugal existence, he accumulated substantial assets that he managed in absolute secrecy. Until 1984, he lived in Mexico and had little contact with daughter, although the record indicates that he was very fond of her. After the death of his wife, with whom he had a very close relationship, he moved to Oregon, where daughter lived, and over the course of time the two developed a much stronger relationship. She testified that, when her father first moved to Oregon, he lacked respect for her intelligence and business acumen; she had borrowed money from him and had attempted unsuccessfully to borrow more from him. However, she said that he later grew to respect and admire her very much, yet he continued to be secretive about money matters. Although decedent liked daughter's husband, he expressed concern during the last months of his life that his money remain with his blood relatives and not go

to her husband; he asked her to promise that any family money that she might inherit would go to his grandchildren. He did not confide in her that he had made a will, even when she suggested that they, together, hire a money manager to manage his assets.

In August, 1985, after consulting with a trust officer of Bank concerning his estate plan, decedent had the will in question, which conformed to that plan, prepared by an attorney, who kept a copy. Another copy was sent to Bank; decedent kept the original. The attorney, as a matter of practice, advised his clients to keep their wills in a safety-deposit box. As late as February 14, 1986, decedent confirmed his estate plan with Bank's trust officer, indicating that his will remained in effect.

Decedent and daughter shared a safety-deposit box at Willamette Savings and Loan Association in Eugene, in which decedent kept "important papers" and daughter kept some jewelry. In September, 1986, decedent may have removed his "important papers" from that box and placed them in his kitchen cupboard, to which daughter also had access. She was the last person to have had access to the safety-deposit box, on September 23, 1986 (before decedent's death) and February 14, 1987, (after his death). There is no direct evidence that decedent's will was among those "important papers." However, after he executed his will, decedent told daughter that the box contained papers required to affect control of his estate and instructed her to take his "important papers" to Bank after his death. After decedent's death, daughter removed the contents from decedent's kitchen cupboard. She testified that she found no will.

The trial court held that, although there is a presumption that a missing will was destroyed by the testator with the intention that it be revoked, the presumption was overcome by the evidence, which it found to be clear and convincing. Accordingly, it admitted the will to probate.

■ When a will that was last known to be in the custody of the testator or in a location to which he had ready access cannot be found after his death, it is presumed to have been destroyed with the intention of revoking it. The strength of the presumption, however, depends on the control that the decedent possessed over the repository and whether others

had access to it. *Van Vlack v. Van Vlack,* 181 Or 646, 657-58, 182 P2d 969 (1947).

■ Daughter contends that the presumption can only be overcome by "clear and satisfactory" evidence, a rather strong burden, relying on *Price v. Wood,* 254 Or 259, 456 P2d 500 (1969), and *Brune v. Oregon St. Bd of Higher Education,* 44 Or App 449, 606 P2d 647, *rev den* 289 Or 1 (1980). In *Price,* none of the persons who might have had access to the will had any interest in it; accordingly, the presumption that it was the decedent who had carefully cut out the name of the principal beneficiary and executor from several places in the will was strong. In *Brune,* it was not questioned that the decedent had mutilated the will; the only question was whether she had done so with the intention of revoking it. We held that the same presumption of revocation applied to mutilation of a will as applies to a lost will and that there was *no* evidence to overcome the presumption of intent to revoke. Neither of those cases establishes what quantum of evidence is required to overcome the presumption of revocation when, as here, the person having access to the will stands to benefit from its having been revoked and there is no evidence that decedent intended to die intestate.

To the contrary, *Van Vlack v. Van Vlack, supra,* remains the controlling authority that the strength of the presumption of revocation varies with the facts. We followed that approach in *Fry v. Edwards,* 5 Or App 471, 484 P2d 322 (1971), in which we found the presumption of revocation of a lost will to have been overcome, holding that the strength of the presumption depends upon the relative control the decedent had over the instrument and the access which others had to it. There, as here, there was no positive proof as to the place where the will was kept, but it was probably kept either in a safety-deposit box or decedent's home. The respondent there, as daughter here, would have been adversely affected by the will and had access to both the decedent's safety-deposit box and his home. Neither there nor here did decedent suggest to anyone that he had revoked his will.

The decedent in *Fry,* about seven months before his death, spoke to the executor of his will about the executor's fiduciary obligations, thus indicating his intent that the will remain in force. Here, decedent reiterated his estate plan to

Bank's trust officer approximately 11 months before his death and instructed daughter to take the papers to Bank after his death.

In summary, daughter's access to the will and the fact that she would benefit by its revocation weaken the presumption. Decedent's re-affirmation of his estate plan in February, 1986, the instructions given by decedent to daughter to take his papers to Bank after his death and decedent's expressed concern that his grandchildren, rather than daughter's husband, receive his assets make it unlikely that he had any intention of revoking his will. We hold that the evidence overcomes the presumption of revocation. That is not to say that daughter has done anything improper; it is only that, on the facts, the presumption is weak and the evidence overcomes it. The will might, in fact, have been lost.

Daughter also contends that the trial court erred in sustaining an objection to testimony of a friend of decedent's as to what decedent's "last wishes would have been with regard to who should control his estate." The record does not show what the witness' answer would have been. The error, if any, was not preserved. In any event, even assuming that the witness would have testified that decedent would have wanted daughter to control his estate, that is not evidence that he preferred to die intestate. The will does more than permit the personal representative to control decedent's estate; it controls the disposition of the estate during daughter's life and after her death. There was no error.

Affirmed.